FILED

JUN 18 2025

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

TAMI BARRIER, §
    Plaintiff, §
 §     Civil Action No.
v. §     DR-23-CV-58–AM
 §
 §
UNITED STATES OF AMERICA, §
    Defendant. §

## ORDER

On November 3, 2023, Plaintiff Tami Barrier filed suit against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 (the "FTCA"). Barrier alleges that Robert Duran, an employee of U.S. Customs and Border Protection ("CBP"), struck and injured her with his vehicle as he was exiting the gated parking lot of the Del Rio Sector CBP facility. She seeks to hold the United States liable under the FTCA for the acts of Duran, asserting that he acted negligently and recklessly while in the course and scope of employment with CBP.

Now pending is the United States' motion for summary judgment [ECF No. 14], in which the United States argues that Duran was not acting in the course and scope of employment at the time of the incident—a necessary element of an FTCA claim. After considering the motion and briefs, the Court concludes that the motion [ECF No. 14] should be **GRANTED**, as explained below.

## I.     BACKGROUND AND UNDISPUTED FACTS

Duran has been employed by the federal government for the past twenty-four years. (ECF No. 14-3 at 3.) Although CBP pays his entire salary, Duran has an atypical schedule where he works forty hours a week as a full-time local Border Patrol union executive vice president and lead steward. (*Id.* at 6.) He only works ten hours of "overtime" work as a Border Patrol agent for CBP.

(*Id.* at 5).  Duran's work schedule typically consists of an eight-hour shift from 6 a.m. to 2 p.m. where he only performs union work, followed by a two-hour shift as a Border Patrol agent.  (*Id.*). Duran typically enters this time on a biweekly basis.  (ECF No. 14-2 at 3.)

On December 2, 2021, Duran started his workday at home performing his union duties. (ECF No. 14-3 at 5.)  After completing his union shift, he reported to the CBP station for his "overtime" shift as a Border Patrol agent.  (*Id.* at 9)  At approximately 3:30 p.m., he clocked out[1] for the day.  (ECF No. 14-4 at 3.)  At approximately 4:00 p.m., Duran, dressed in uniform and driving his personal vehicle, exited through the gate of the CBP facility.  (ECF No. 14-2 at 17.) At this point in time, the Border Patrol had no authority to instruct him on how to drive his private vehicle.  (*Id.*)

Meanwhile, Barrier was standing outside the gate as part of a delegation that traveled to the southern border to deliver supplies to law enforcement agents and to document the goings-on at the border.  (ECF No. 12 at 4.)  The group had stopped at the Del Rio Station to ask permission to film the outside of the facility.  (*Id.*)  Barrier alleges that as she was standing near the entrance of the Del Rio Station, Duran stopped his vehicle at the gate, accelerated towards her, struck her with his vehicle, and continued driving.  (*Id.*)  She asserts that she suffered injuries during the incident that required medical treatment.  (*Id.* at 5.)

According to the deposition testimony of Duran, he was heading home after his Border Patrol shift when the incident occurred.  (ECF No. 14-3 at 10).  However, shortly after leaving the station, Agent Anfinsen, a fellow Border Patrol Agent and the local union president, called Duran to remind him about a meeting at 4:00 p.m. with a group of Republican women at the union hall—

---

[1] There is some dispute as to when exactly Duran "clocked out" because Duran did not log his time contemporaneously to the incident. The actual timing is ultimately immaterial to the outcome of this case.

a non-CBP facility. (*Id.*) A day or two prior, Duran agreed to meet the group, who wanted to donate items such as snacks and drinks to Border Patrol agents. (*Id.* at 10-11.) Realizing he forgot about the meeting, Duran headed to the union hall. (*Id.* at 10.)

Duran received the donations, and then, upon hearing that the police wanted to speak with him about the incident with Barrier, he returned to the Border Patrol station. (*Id.* at 11-12.) Duran did not log any hours on his time sheet for the trip to or from the union hall, and his supervisors at CBP did not require him to submit a report about the incident. (ECF Nos. 14-1; 14-3 at 16)

Barrier subsequently filed an administrative claim for damages with CBP. (ECF No. 12 at 3.) After waiting more than six months with no decision on her claim, she filed the present cause of action under the FTCA. (*Id.*); *See* 28 U.S.C. § 2675(a) (a claimant may construe a claim as constructively denied after six months). According to Barrier's Second Amended Complaint, Duran, while acting in the course and scope of employment with CBP, acted negligently and recklessly in operating his vehicle, causing her injuries that required medical care. (*Id.* at 5.) Because Duran was acting in the scope of his employment with CBP, she asserts that the United States is vicariously liable for the acts of Duran. (*Id.* at 2.)

The United States filed a motion to dismiss, arguing that Duran was not acting in the course and scope of employment at the time of the incident. (ECF No. 5.) The parties agreed to limited discovery, the United States withdrew its motion to dismiss, and Barrier thereafter filed the aforementioned second amended complaint to add additional facts. (ECF Nos. 6, 12.) The United States followed with the present motion for summary judgment, relying on deposition testimony to, once again, argue that Duran was not acting in the course and scope of employment at the time of the incident. (ECF No. 14.) Barrier responded that there are many factual disputes that must

3

be resolved before it can be determined whether Duran was acting in the course and scope of employment.  (ECF No. 15)

## II.    SUMMARY JUDGMENT STANDARD

The FTCA is unique in that "all elements of a meritorious claim are also jurisdictional." *Brownback v. King*, 592 U.S. 209, 210 (2021).  As such, when evidence outside the pleadings is considered, as it is here, the proper procedure is to assume jurisdiction and address the course and scope of employment in a Rule 56 motion for summary judgment, rather than a Rule 12(b)(1) motion. *M.D.G.C. v. United States*, 956 F.3d 762, 768-69 (5th Cir. 2020); *Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004); *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981).

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Whitt v. Stephens Cnty.*, 529 F.3d 278, 282 (5th Cir. 2008).  Summary judgment is appropriate, for example, when after a sufficient period of discovery, a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "A dispute regarding a material fact is 'genuine' if the evidence would permit a reasonable jury to return a verdict in favor of the nonmoving party." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004).

The moving party satisfies its burden of demonstrating that no genuine issues of fact are in dispute by:

> (A)    citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B)     showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

If the movant meets this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The Court will draw all justifiable inferences in favor of the non-moving party, but the non-moving party must present enough evidence so that a jury could find in its favor. *Whitt*, 529 F.3d at 282.

## III.     ANALYSIS

### A.  The FTCA

The FTCA "effects a limited waiver of sovereign immunity, affording federal court jurisdiction where the United States shall be liable in tort 'in the same manner and to the same extent as a private individual under like circumstances.'" *Ecker v. United States*, 358 F. App'x 551, 552-53 (5th Cir. 2009) (citing *United States v. Mitchell,* 463 U.S. 206, 212 (1983)). It is the exclusive remedy for tort actions against the United States. 28 U.S.C. § 2679.

For an FTCA claim to be actionable, a claim must be: "[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Brownback*, 592 U.S. at 212 (quoting 28 U.S.C. § 1346(b)). In

evaluating whether an employee was acting within the scope of his employment under the fifth element, a court must also look to the laws of the state in which the act or omission occurred. *Bodin v. Vagshenian*, 462 F.3d 481, 484 (5th Cir. 2006); *Williams v. United States*, 350 U.S. 857 (1955); *Rodriguez v. Sarabyn*, 129 F.3d 760, 766 (5th Cir.1997).

Barrier seeks to hold the United States liable for the negligent and reckless acts of Duran. As a general rule, "a person has no duty to control another's conduct." *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 131 (Tex. 2018). However, in Texas, where the incident occurred, "the doctrine of vicarious liability, or respondeat superior, makes a principal liable for the conduct of his employee or agent" if, at the time of the negligent conduct, the employee was acting in the course and scope of their employment. *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 686 (Tex. 2007).[2] In other words, to establish elements five *and* six of an FTCA claim, Barrier must prove, under Texas law, that Duran was acting in the course and scope of employment.

## B. Course and Scope[3]

Looking to Texas law, the course-and-scope inquiry "involves an objective analysis, hinging on whether the employee was performing the tasks generally assigned to him in furtherance of the employer's business." *Painter*, 561 S.W.3d at 138. "That is, the employee must be acting with the employer's authority and for the employer's benefit." *Id.* at 138-39. So long as the employee acts "in furtherance of the employer's business and for the accomplishment of the

---

[2] Essentially, the doctrine of vicarious liability is "a deliberate allocation of risk in line with the general common law notion that one who is in a position to exercise some general control over the situation must exercise it or bear the loss." *Painter* 561 S.W.3d at 131 (internal quotations omitted).

[3] The parties do not dispute that Duran was an employee of CBP. The issue before the Court is whether Duran was working at the time of the accident.

object for which the employee was hired," he is acting in the course and scope of their employment. *Id.* at 131 (quoting *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007)). The "element hinges on an objective assessment of whether the employee was doing his job when he committed a tortious act." *Id.* at 132. The act "must be of the same general nature as the conduct authorized or incidental to the conduct authorized." *Id.* at 131. "Accordingly, if an employee deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during that deviation." *Id.* at 137; *Mayes*, 236 S.W.3d at 757.

Under the "coming-and going" rule, an employee "is not generally in the course and scope of employment when driving to and from work." *Garza v. RDL Energy Services, LP*, 697 S.W.3d 663, 674 (Tex. App. 2022). "The rationale that informs that rule is that travelers on public roads are equally susceptible to the hazards of doing so, whether employed or not." *Cameron Int'l Corp. v. Martinez*, 662 S.W.3d 373, 376 (Tex. 2022). One exception to this rule is when an employee is on a "special mission" at the direction of his employer or is otherwise performing a service in furtherance of his employer's business with the express or implied approval of his employer. *Painter*, 561 S.W.3d at 136. The exception requires "some special benefit to the employer other than the mere making of the employee's services available to the employer at his place of business." *Pilgrim v. Fortune Drilling Co.*, 653 F.2d 982, 987 (5th Cir. 1981). Accordingly, if Duran was merely leaving work, he would not be within the course and scope of employment, but, if Duran was conducting a "special mission" for CBP he would be within the course and scope of his employment.

### C. The Parties' Arguments

In support of summary judgment, the United States submitted deposition testimony from several Border Patrol agents, including Duran. According to the United States, the evidence is

7

undisputed and shows Duran finished his shift as a Border Patrol agent and was simply leaving work to return home at the time of the incident, thus falling under the coming-and-going rule. Even if he intended to travel to the union hall instead of going home, the United States argues that this did not constitute a special mission, as it: (1) was nothing more than a personal favor for Agent Anfinsen for which he was not compensated; and (2) had nothing to do with his employment with CBP. The United States also presents evidence that Anfinsen was not Duran's supervisor and had no control over Duran's duties as a Border Patrol agent *or* a union representative. The evidence also indicates that Duran was not required to provide CBP with any accident report.

Barrier, in turn, cites an Iowa Supreme Court worker's compensation case involving union activity and argues that travel to the union hall was a special mission for the benefit of CBP for which Duran *could* have been compensated by CBP, thus occurring in the course and scope of employment. *See Caterpillar Tractor Co. v. Shook*, 313 N.W.2d 503 (Iowa 1981). She also argues there are many material factual disputes supporting course and scope that must be resolved by a finder of fact, including whether: (1) Duran had in fact clocked out before leaving the CBP facility; (2) Anfinsen was indeed Duran's union supervisor, (3) Duran actually intended to go home when he pulled out of the parking lot; and (4) whether accepting donations constitutes a personal favor.

**D. Analysis**

This case presents an unusual set of facts, where Duran plays a dual role as a Border Patrol agent and a union official. Adding to the complexity, Duran, if anything, was performing union activities at the time of the incident. Therefore, the summary judgment inquiry collapses into one question: Was Duran within the course and scope of his employment while going to meet the women at the union hall? This Court finds that he was not.

As the United States notes, there is little to no case law involving vicarious liability and union activity. But despite the United States' reluctance to look to workers' compensation cases for guidance, the Court finds that it is a very useful starting point. The doctrines of worker's compensation and vicarious liability unquestionably serve vastly different purposes.[4] Notwithstanding, many principles from vicarious liability derive from workers' compensation laws, including the "coming and going rule" and its "special mission" exception. *Painter*, 561 S.W.3d at 136. In fact, ninety percent of the decisions discussing course of employment in routine cases are interchangeable. 1 Larson's Workers' Compensation - Desk Edition § 12.02 (2025). At the very least, the course and scope of employment in workers' compensation cases is as broad, if not broader, than in vicarious liability cases[5]. In other words, if Duran was not in the course of

---

[4] A workers' compensation system is a no-fault system designed to compensate workers who were injured in the course and scope of employment. It is a compromise between workers and employers where workers forfeit the right to sue the employer in exchange for limited benefits. Because the benefits are so limited, the scope of employment in workers' compensation cases is liberally construed in favor of the employee. *See Kroger v. Keng*, 23 S.W.3d 347, 349 (Tex. 2000). The concept of vicarious liability, in turn, is an effort to impose liability on one party for the conduct of another; a concept which is generally a pure policy question of allocation of risk. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 542 (Tex. 2002). Courts are, therefore, more reluctant to interpret "course and scope" expansively in the context of vicarious liability. *See Shelton v. Standard Ins. Co.*, 389 S.W.2d 290, 293 (Tex. 1965) (holding that while a truck driver crossing the street was within the course and scope of his employment for workers' compensation purposes, it could not be "seriously contended" that he was within the scope of employment for purposes of vicarious liability.)

[5] This Court recognizes that Texas courts have been reluctant to allow course and scope inquiries in the workers' compensation context to inform such inquiries in the vicarious liability context. *See Cameron Int'l Corp. v. Martinez*, 662 S.W.3d 373, 378–79 (Tex. 2022). (noting that "the statutory definition of course and scope for workers' compensation insurance purposes does not inform the concept under the common law for the purpose of imposing vicarious liability against an employer.") However, decisions like *Cameron Int'l Corp* have addressed the issue in the context of litigants attempting to expand the definition of course in scope in the vicarious liability context. Here this Court only seeks to use workers' compensation's definition of course and scope as a wider concentric circle that vicarious liability course and scope must fit within. Said another way, workers' compensation is only a useful starting point insofar as it demonstrates the absolute outer bounds of a course and scope inquiry. It cannot be used to expand the doctrine, and the Court

9

employment under a worker's compensation scheme, he, likewise, was not in the course of employment for purposes of vicarious liability.

Looking to workers' compensation cases, the general rule is that union activities are personal. Attendance at a union meeting, for example, is exclusively for the personal benefit of the employee and devoid of any mutual employer-employee benefit that would bring it within the course of employment. *Matter of Van Tassell & Dep't of Transportation*, 44 E.C.A.B. 316 (Dec. 24, 1992); *see also*, *Spatafore v. Yale Univ.*, 239 Conn. 408 (1996) (holding that an employee who was injured while walking back to work from a union meeting during an unpaid lunch break was not acting in the course of employment.) However, "[e]mployees performing representational functions entitling them to official time are in the performance of duty and entitled to all [workers' compensation benefits] if injured in the performance of these functions." *See, e.g.*, *Kennedy v. Thompson Lumber Co.*, 223 Minn. 277, 26 N.W.2d 459 (1947) (an employee acting in his capacity as a union shop steward was acting in the course of his employment when he was injured crossing the street to reach an off-premises telephone in order to avert a threatened work stoppage); *Mikkelsen v. N. L. Indus.*, 72 N.J. 209, 370 A.2d 5 (1977) (holding that an employee who was injured while en route from union meeting which was held after normal working hours and off employer's premises, but which was called for purpose of ratification or rejection of collective bargaining contract offered by employer, was within the special mission exception to the "going and coming" rule and injury was compensable.). Importantly though, activities related to the internal business of a labor organization, such as soliciting new members or collecting dues, are not included, even if compensated. 5 U.S.C. § 7131.

---

here only uses it to demonstrate that if Duran was outside of the course and scope of his employment for workers' compensation, he remains outside the course and scope for vicarious liability.

With these basic tenets in mind, and resolving all factual disputes in Barrier's favor, no reasonable juror could find that Duran was acting in the course and scope of employment at the time of the incident. Even if the Court were to assume: (1) the incident occurred on union time, (2) Anfinsen was Duran's supervisor, and (3) Duran was heading to the union hall at the time of the incident to complete a mission, Duran was not performing a representational function entitling him to time off and was not acting in furtherance of his business for CBP.

If he was heading to the union hall, it was at the behest of a union official, not a CBP supervisor, to perform a task for the union, not CBP. Importantly, accepting donations of drinks and snacks for Border Patrol agents provided no substantive benefit to CBP, or the union, for that matter. Further, Duran's testimony also indicates that he was not compensated for this trip. Although Barrier questions whether Duran *could* have been compensated for the trip, Duran in fact could not have been, as he was not performing any representational act at the time[6]. Whether on a mission or simply performing a favor for Anfinsen, Duran was not providing a representative act for which he was entitled to official time.

Given that, at the time of the incident, Duran was either leaving the job site or performing a non-compensable personal favor when he struck Barrier, it is implausible that Duran was acting within the course and scope of his employment at CBP. Because Duran was not acting within the

---

[6] A federal employee is entitled to official time for union work so long as the work is representational. *See* Federal (FECA) Procedure Manual, Part 2 – Performance of Duty, *Representational Functions*, Chapter 2.0804.6(16) (May, 1994) (citing 5 U.S.C. § 7101). The Department of Labor defines representational functions as "those authorized activities undertaken by employees on behalf of other employees pursuant to such employees' right to representation under statute, regulation, executive order, or terms of a collective bargaining agreement. It includes activities undertaken by specific, individual designation (such as designation of a representative in a grievance action or an EEO complaint), as well as those activities authorized by a general collective designation such as the designation of a labor organization recognized as exclusive representative under Chapter 71 of Title 5." *Id.* The simple act of meeting someone at a union hall does not qualify as a compensable union task.

11

course and scope of this employment, the United States cannot be held vicariously liable for his acts and summary judgment is appropriate.

## IV. CONCLUSION

No reasonable juror could conclude that Agent Duran was acting in the course and scope of his duties as a United States Border Patrol agent, therefore, summary judgment is appropriate. Accordingly, the United States's Motion for Summary Judgment [ECF No. 14] is hereby **GRANTED**.

SIGNED and ENTERED on this 18th day of June 2025.

_____
ALIA MOSES
Chief United States District Judge